EDWARD AMEEN MISLEH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Misleh v. Commissioner
Docket No. 18781-89
United States Tax Court
T.C. Memo 1991-428; 1991 Tax Ct. Memo LEXIS 477; 62 T.C.M. (CCH) 640; T.C.M. (RIA) 91428; September 3, 1991, Filed *477 Decision will be entered for the petitioner. Thomas E. Kemp. Jr., for the petitioner. Glenn McLoughlin, for the respondent. CANTREL, Special Trial Judge. CANTREL
MEMORANDUM FINDINGS OF FACT AND OPINION This case was assigned and heard pursuant to section 7443A(b)(3) and Rule 180 et seq. [1]
In his notice of deficiency issued to petitioner on April 24, 1989, respondent determined deficiencies in petitioner's Federal income tax and additions to the tax for the calendar year 1981 in the following respective amounts: Additions to Tax
Year
Income Tax
Section 6653(a)(1)
Section 6653(a)(2)
1981
$ 7,272.00
$ 363.60
50% of the interest
due on $ 7,272.00
The issues for decision are whether petitioner received unreported income in 1981 in the amount of $ 19,000, and whether he is liable for the additions to the *478 tax. FINDINGS OF FACT Some of the facts were stipulated and are so found. The stipulation of facts and related exhibits are incorporated herein by this reference. Petitioner resided at 209 Second Avenue, Melbourne Beach, Florida, on the date he filed his petition herein. The only adjustment to income determined by respondent in his deficiency notice is in the amount of $ 19,000, based upon the following explanation: It has been determined that during 1981 you received income of $ 19,000.00 from World of Entertainment which is not reported on your return. Accordingly, your taxable income is increased $ 19,000.00
World of Entertainment, Inc. (World of Entertainment) was an Oklahoma corporation which was incorporated in September 1981. Petitioner owned one-third of the stock of World of Entertainment and his mother and brother owned the other two-thirds. During the last quarter of 1981, World of Entertainment operated Walter Mitty's, a nightclub located in Norman, Oklahoma. Petitioner managed the operation of the nightclub during the last quarter of 1981, and he prepared the U.S. Corporate Income Tax Return (Form 1120) on February 16, 1982. The return was filed with the *479 Internal Revenue Service Center at Austin, Texas, on February 22, 1982. Salaries and wages of $ 23,020 are reported on line 13(a) of that return. World of Entertainment's Form 1120 was subjected to an Internal Revenue Service audit examination at the same time petitioner's 1981 return underwent a similar examination. The result of the audit examination was that no changes were made to the Form 1120, i.e., it was accepted as filed. Petitioner prepared his individual 1981 Federal income tax return (Form 1040A) on or about February 23, 1982. He timely filed that return with the Internal Revenue Service. He reported his filing status to be "single" and his occupation as "Manager." Attached to the return is a Form W-2, Wage and Tax Statement, showing that World of Entertainment paid petitioner wages of $ 17,333.29 in 1981 and withheld Federal income tax on those wages in the amount of $ 3,174.60. Both of the foregoing amounts are reported on petitioner's return. At one time, the Misleh family consisted of petitioner's father (Mr. Misleh), his mother (Mrs. Misleh), petitioner, and his brother, Emile. Petitioner and Emile were raised in Washington, D.C., during which time Mr. Misleh *480 owned and very successfully operated The Baghdad Restaurant, The Espionage Restaurant, and The Whitehorse Restaurant. Mr. Misleh died in 1970 leaving Mrs. Misleh "well off." He also left bequests to petitioner and Emile which were invested and managed for them by Mrs. Misleh. Subsequent to her husband's death, Mrs. Misleh owned, among other things, stocks and bonds, an undetermined amount of cash, and two parcels of improved real estate, one of which she sold in 1972 or 1974 for $ 80,000. The Mislehs were a very close-knit family. It was not uncommon for them to pool their financial interests to assist one another in a particular venture. For example, Mrs. Misleh and her sons purchased all of the stock in World of Entertainment together. During 1980 and 1981, petitioner and Emile resided in Norman, Oklahoma (Norman). Mrs. Misleh was 58 years old in 1981, in poor health, and not expected to live many more years. She was a diabetic and had already lost one leg due to poor circulation. She could not walk up and down stairs, and was having difficulty living in her home in Fort Washington, Maryland. In these circumstances, and desirous of being closer to her sons, she had discussions *481 with them concerning her moving to Norman. During these discussions, Mrs. Misleh made it clear that she would contribute to the cost of any home that was purchased for her to live in. For that purpose, it was agreed that she would cash in two certificates of deposit, which she jointly owned with petitioner. Each certificate was purchased for $ 10,000 in 1979. In addition, she sold her home in Fort Washington before she moved to Norman. The record does not disclose its sale price. After looking around, petitioner found a home in Norman which had a downstairs bedroom and bathroom which was ideally suited for and would be exclusively used by Mrs. Misleh. Mrs. Misleh followed through on the agreement by giving petitioner $ 19,488.60 cash from the certificates of deposit for the down payment on the house. On December 4, 1981, he bought that home with $ 19,488.60 in cashier's checks and assumed a mortgage with a principal balance of $ 74,879.48. Mrs. Misleh lived in the house until her death from renal failure in 1985. The jointly owned certificates of deposit were the source of the $ 19,488.60 used for the down payment on the home. OPINION We must decide whether petitioner *482 received $ 19,000 in unreported income in 1981 from World of Entertainment, or any other source, which he failed to report on his return and, if so, whether he is liable for the negligence additions to the tax. Petitioner has the burden of proving that respondent's determinations are in error. ; Rule 142(a). We find he has met this burden. The record shows to our satisfaction that the Mislehs were a very close knit family and that it was not uncommon for them to pool their interests financially. Further, we are satisfied that Mrs. Misleh was left "well off" when her husband died. We are convinced that her failing health and her desire to be with her sons during the last years of her life were extremely influential factors in her decision to move to Norman and in petitioner's decision to purchase the house in 1981. Petitioner testified that just prior to her move to Norman, his mother cashed in the two certificates of deposit and gave him the proceeds which he used to purchase the cashier's checks for the down payment on the home. Copies of documents showing Mrs. Misleh's and petitioner's ownership of said certificates *483 are in this record. Petitioner's testimony stands uncontroverted. That testimony was corroborated by Emile, who testified that his mother gave petitioner "some money to put down on the home." This testimony likewise is unrefuted. On this record, we believe petitioner and Emile. In our view, petitioner has proven a source for the $ 19,000 determined to be unreported income in 1981 by respondent. Respondent has produced no probative evidence for us to decide otherwise. We conclude, therefore, that petitioner received no unreported income in 1981 from World of Entertainment or any other source. In view of our conclusion, the additions to the tax are not applicable. Decision will be entered for the petitioner.
Footnotes
1. Section references are to the Internal Revenue Code as in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure.↩